**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

STANLEY HOUGH,
                            Plaintiff,

v.                                         No. 05-CV-352
                                                 (NAM/DRH)
L. JUBERT, Dep. Supt./Security; J. NORCROSS,
Lt.; and B. TUCKER, Officer,
                            Defendants.

**APPEARANCES:**                       **OF COUNSEL:**

STANLEY HOUGH
Plaintiff Pro Se
805 Clay Street
Danville, Virginia 24540

HON. ANDREW M. CUOMO             RISA L. VIGLUCCI, ESQ.
Attorney General for the                 Assistant Attorney General
  State of New York
Attorneys for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

      Plaintiff pro se Stanley Hough ("Hough"), formerly an inmate formerly in the custody of the New York State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, three DOCS employees, violated his constitutional rights under the First and Fourteenth Amendments. See Am. Compl. (Docket No. 6). Presently pending is defendants' motion for summary judgment pursuant to Fed. R.

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Civ. P. 56. Docket No. 29. Hough opposes the motion. Docket No. 30. For the following reasons, it is recommended that defendants' motion be granted.

**I. Background**

The facts are presented in the light most favorable to Hough as the non-moving party. See Ertman v. United States, 165 F. 3d 204, 206 (2d Cir. 1999).

Dreadlocks are a style of hair worn by members of the Rastafarian faith and others in which hair is arranged in long braids radiating from the scalp. For security reasons, DOCS policy prohibits inmates from wearing their hair in dreadlocks unless they are Rastafarian. Bly Decl. (Docket No. 29, Ex. C) at ¶ 7-11. The exception for Rastafarians exists because dreadlocks are part of their religious expression. See, e.g., Benjamin v. Coughlin, 905 F.2d 571, 573 (2d Cir. 1990).

At all relevant times, Hough, an African-American, was a member of the Nation of Islam, was not a Rastafarian, wore his hair in dreadlocks, and was incarcerated at Bare Hill Correctional Facility ("Bare Hill") . See Am. Compl. at ¶ 3. On November 17, 2003, defendant Tucker, a corrections officer, informed Hough that he was not authorized to wear his hair in dreadlocks because he was not a registered Rastafarian. See Viglucci Aff. (Docket No. 29), Ex. A. Tucker gave Hough a direct order to remove his dreadlocks by November 20. Id.; see also Am. Compl. at ¶ 3. When Hough failed to remove his dreadlocks, Tucker issued Hough a misbehavior report and placed him on cube confinement. Id. At his November 24, 2003 disciplinary hearing, Hough was found guilty by defendant Norcross, the hearing officer, of violating a direct order. See Viglucci Aff., Ex. A. Hough was

2

sentenced to thirty days keeplock[2] and thirty days loss of commissary, recreation, packages, and telephone. Id.; see also Am. Compl. at ¶ 4. The conviction and sentence were affirmed on administrative appeal. This action followed.

## II. Discussion

Hough asserts four causes of action against each defendant alleging that they conspired to violate his civil rights. Hough also contends that defendants violated his due process and equal protection rights under the Fourteenth Amendment and his free exercise rights under the First Amendment. Defendants seek judgment on all claims.

### A. Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

---

[2] "Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities." Green v. Bauvi, 46 F.3d 189, 192 (2d Cir. 1995); N.Y. Comp. Codes R. & Regs. tit. 7, § 301.6 (1999).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).  When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude.  Id.; see also Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.  Anderson, 477 U.S. at 247-48.

### B. First Amendment

Hough contends that defendants' order that he remove his dreadlocks was in violation of the First Amendment's Free Exercise Clause.

"[I]nmate[s] retain those First Amendment rights that are not inconsistent with [their] status as a prisoner."  Pell v. Procunier, 417 U.S. 817, 822 (1974).  Thus, subject to reasonable prison regulations, inmates retain the protection of the Free Exercise Clause. See id.  To demonstrate a free exercise claim, a plaintiff must show that the defendants "significantly interfered" with his or her religious beliefs.  McEachin v. McGuinnis, 357 F.3d 197, 203 (2d Cir. 2004); see also Jones v. Goord, 435 F. Supp. 2d 221, 256 (S.D.N.Y. 2006). Here, Hough fails to present any evidence that DOCS Directive 4914, which established the

DOCS policy, interferes in any way with his stated religious beliefs. There is no claim or proof that dreadlocks were a form of expression of Hough's Islamic beliefs. Thus, Hough's First Amendment claim fails.

Therefore, it is recommended that defendants' motion on this ground be granted.

### C. Equal Protection

Hough contends that DOCS Directive 4914, which established the basic grooming standards for inmates, was designed to promote class-based discriminatory animus in violation of the Fourteenth Amendment's Equal Protection Clause.

The Fourteenth Amendment's Equal Protection Clause mandates equal treatment under the law. Essential to that protection is the guarantee that similarly situated persons be treated equally. City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). "In order to establish an equal protection violation, the plaintiffs must show that they were treated differently than other people in similar circumstances and must establish that such unequal treatment was the result of intentional and purposeful discrimination." Myers v. Barrett, No. Civ. 95-1534(RSP/GJD), 1997 WL 151770, at *3 (N.D.N.Y. Mar. 28, 1997). In addition, a valid equal protection claim may be brought by a "class of one" "where the plaintiff alleges that she [or he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Neilson v. D'Angelis, 409 F.3d 100, 105 (2d Cir. 2005).

The Equal Protection Clause does not prohibit prison officials from classifying inmates for various purposes as long as the classification remains reasonable. See Western & S.L.I. Co. v. Bd. of Equalization, 451 U.S. 648, 681 (1981). A challenge to a classification is

5

subject to strict scrutiny if the classification applies to a suspect class, such as one based on race or religion. Otherwise, a classification must satisfy the more relaxed "rational basis" standard. See Massachusetts Bd. of Retirement v. Murhia, 427 U.S. 307, 311-12 (1976). In the prison context, a classification is rationally based "if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987).

    Here, the DOCS policy was directed to all inmates, not to a particular racial or religious group or any other suspect group. Thus, the less stringent rational basis analysis applies. Defendants have offered substantial and unrebutted evidence that the policy served important security and penological interests of DOCS. See Bly Decl. at ¶¶ 7-11. This suffices to demonstrate a rational basis for the policy, both on its face and as applied to Hough. Cf. Fromer v. Scully, 874 F.2d 59, 75 (2d Cir. 1989) (upholding prison policy against challenge to limitation on beards). The DOCS policy at issue here, therefore, did not violate the Equal Protection Clause.

    It is recommended that defendants' motion on this ground be granted.

### D. Due Process

### 1. Liberty Interest

Hough contends that Norcross violated his due process rights when he refused to allow a witness to testify at his disciplinary hearing. See Am. Compl.; see also Pl. Reply Mem. of Law (Docket No. 30) at 4.

As a threshold matter, an inmate asserting a violation of his or her right to due process must establish the existence of a protected interest in life, liberty, or property. See Perry v. McDonald, 280 F.3d 159, 173 (2d Cir. 2001). To establish a protected liberty interest, a prisoner must satisfy the standard set forth in Sandin v. Conner, 515 U.S. 472, 483-84 (1995). This standard requires a prisoner to establish that the deprivation was atypical and significant in relation to ordinary prison life. Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir. 1999); Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996).

Hough contends that his due process rights were violated at the disciplinary hearing conducted by Norcross. However, as a result of this hearing, Hough was only sentenced to thirty days of keeplock. "As a number of district courts have noted, 'the decisions in the Second Circuit are unanimous that keeplock . . . of 30 days or less in New York prisons is not 'atypical or significant hardship' under Sandin.'" Smart v. Goord, 441 F. Supp. 2d 631, 640 (S.D.N.Y. 2006) (quoting Williams v. Keane, No. Civ. 95-0379(AJP)(JGK), 1997 WL 527677, at *6 (S.D.N.Y. Aug. 25, 1997) (citing cases)); see also Hynes v. Squillace, 143 F.3d 653, 657-58 (2d Cir. 1998). Thus, Hough has failed to establish the existence of a protected liberty interest.

Accordingly, it is recommended that defendants' motion on this ground be granted.

**2. Merits**

At a prison disciplinary proceeding, an inmate is entitled to (1) advance written notice of the charges, (2) an opportunity to call witnesses if it conforms with prison security, (3) a statement of evidence and reasons for the disposition, and (4) a fair and impartial hearing officer. Kalwasinski v. Morse, 201 F.3d 103, 108 (2d Cir. 1999) (citing Wolff v. McDonnell, 418 U.S. 539, 563-64 (1974)). Additionally, the finding of guilt must be supported by some evidence in the record to comport with due process. Massachusetts Corr. Inst. v. Hill, 472 U.S. 445, 455 (1985); Gaston v. Coughlin, 249 F.3d 156, 162 (2d Cir. 2001).

At his disciplinary hearing, Hough requested leave to call one witness, a Rastafarian Chaplain. See Viglucci Aff., Ex. A. However, after determining that the Chaplain had no direct knowledge of Hough's current misbehavior report, Norcross declined to call the Chaplain as a witness. Id. On the record here, Norcross' ruling was correct. The record is devoid of any evidence to suggest that the Chaplain had any direct knowledge regarding the circumstances surrounding Hough's refusal to comply with the direct order.[3] Moreover, even if reasonable minds might differ over whether the Chaplain should have been allowed to testify, a hearing officer possesses reasonable discretion in making such determinations. See Kalwasinski, 201 F.3d at 109 ("a hearing officer does not violate due process by excluding irrelevant or unnecessary testimony").

Accordingly, in the alternative, defendants' motion should also be granted on the merits.

---

[3] Furthermore, to the extent that Hough sought to elicit from the Chaplain that Rastafarians were permitted to wear dreadlocks, this fact was not disputed by DOCS and such testimony was, therefore, properly excluded as immaterial.

### E. Conspiracy

In his first cause of action, Hough alleges that defendants conspired to violate his civil rights. To state a claim for relief under 42 U.S.C. § 1985(3), a plaintiff must show

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.

Mian v. Donaldson, Lufkin, & Jenrette Securities Corp., 7 F.3d 1085, 1087 (2d Cir.1993). Here, Hough only makes conclusory allegations of a conspiracy between the defendants and fails to offer any evidence of an agreement or that any two defendants joined together to deprive Hough of any right. Thus, his conspiracy claims must fail. See Webb v. Goord, 340 F.3d 105, 111 (2d Cir. 2003) (holding that conclusory statements alone cannot support a conspiracy allegation).

Therefore, defendants' motion on this ground should be granted.

### F. Qualified Immunity

Defendants also contend that they are entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability insofar as their conduct does not violate clearly established constitutional law of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229 (N.D.N.Y. 2002), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003). A court must first determine that if plaintiff's allegations are accepted as true, there would be a constitutional violation. Only if there is a constitutional violation does a court proceed to determine whether

the constitutional rights were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230. Here, as discussed supra, accepting all of Hough's allegations as true, he has not shown that defendants violated his constitutional rights.

Therefore, in the alternative, defendants' motion for summary judgment on this ground should be granted.

### III.  Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that defendants' motion for summary judgment (Docket No. 29) be **GRANTED** as to all claims and all defendants.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


DATED:  September 13, 2007
          Albany, New York

                                              /s/ David R. Homer
                                              United States Magistrate Judge